UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
RAUL CRESPO,

                        Plaintiff,

      - against -

PHILIPPOS KAPNISIS, *et al.*,

                      Defendants.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

21-cv-6963 (BMC)

**COGAN**, District Judge.

In this wage recovery action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), defendants have moved to compel arbitration, and stay the action. For the following reasons, defendants' motion is granted, subject to the severance of several unacceptable provisions in the arbitration agreement, and the action is stayed pending arbitration.

## BACKGROUND

**I.    Factual Background**

    **A.    Plaintiff Signs Agreement**

Plaintiff worked as a construction worker, employed by at least one of the defendants, which are iron work companies and their principal, from 2011 to 2021.

In June 2021, after defendants had been sued in at least two other cases for labor law violations, defendant Kapnisis, the owner of the companies, addressed plaintiff and other workers when they went to defendants' payroll office to receive their weekly pay.[1]  As plaintiff's

---

[1] There is a factual dispute about when plaintiff was presented with the arbitration agreement. I am viewing the facts in the light most favorable to plaintiff.

native language is Spanish, he had another worker translate for him. Kapnisis gave them the subject document, titled "Arbitration Agreement," and told them, according to plaintiff's English-speaking co-worker, that they could not continue to work without signing it. This, Kapnisis said, was because "a lot of employees were getting hurt on the job site."

Plaintiff avers that "[n]o one from the company explained what [he] was signing" or "told [him] to consult with a lawyer before signing." However, the agreement provided, in all capitalized letters: "PLEASE READ [the agreement] CAREFULLY, PRIOR TO SIGNING. UNDERSIGNED MAY SEEK INDEPENDENT LEGAL COUNSEL PRIOR TO SIGNING THIS AGREEMENT." Ultimately, plaintiff signed what he was given, without consulting an attorney or making inquiries into the contents of the agreement.

Three months later, in September, he was fired.

B.  **The Arbitration Agreement**

The agreement at issue seems to be an unmodified version of a poorly drafted form agreement. Even so, or perhaps because of this, it has some unusual features. For one, although plaintiff signed the agreement, no counterparty did, and the agreement is undated. Although there are numerous places in the agreement where the counterparty's name is obviously supposed to appear, it does not, leaving in the placeholder, "COMPANY NAME."

The agreement also contains several provisions which plaintiff contends are unenforceable due to unconscionability. First, the agreement excludes punitive, consequential, special, or indirect damages. In addition, if there are proceedings following arbitration to confirm or vacate the award, the document provides that the prevailing party shall recover its attorneys' fees as of right.

Second, the agreement requires that plaintiff shall share the costs of the arbitration and the arbitrator's fees. The procedure for arbitration in the agreement gives the counterparty the

2

exclusive right to unilaterally designate a single arbitrator with no input from the employee. That arbitrator must be picked from "a list of arbitrators provided by" the United States District Court for the Southern District of New York, "the State Court of New York", the New York State Bar Association, or the counterparty could appoint a "retired judge" with at least ten years of experience.[2] The first three options are non-viable as none of those entities provide "a list of arbitrators," and therefore, a retired judge would need to be selected, at a potentially significant cost. Plaintiff avers that he has no savings, and that his family's only income is from his "odd jobs" and his wife's twice weekly work as a housekeeper.

Third, the document purports to shorten the statute of limitations for wage claims from three years (FLSA) or six years (NYLL) to one year.

## II. Procedural Background

Plaintiff commenced this action in December 2021, about six months after he alleges that he was presented with the agreement. The complaint contains three claims for relief, the first two under the FLSA and the NYLL, respectively, for unpaid overtime, and the third under the NYLL for failure to provide plaintiff with wage notices and wage statements.

Relying on the arbitration agreement, defendants have moved to compel arbitration and stay the action.

## DISCUSSION

## I. Legal Standard

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). A court "consider[s] all relevant, admissible evidence

---

[2] If the arbitration is to be held in New Jersey, the document provides comparable New Jersey-oriented provisions.

3

submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)), and draws all reasonable inferences in favor of the non-moving party. See Nicosia v. Amazon.com, 834 F.3d 220, 229 (2d Cir. 2016).

The party seeking to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue." Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (cleaned up). Once the moving party establishes a *prima facie* showing that an agreement existed, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010).

Courts consider four factors to determine whether an action should be stayed in favor of arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope [of] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." McAllister v. Conn. Renaissance Inc., 496 F. App'x 104, 106 (2d Cir. 2012) (citing JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004)).

## II. Scope of Agreement and Congressional Intent

Two of the four factors, "the scope [of] the arbitration agreement" and Congress's intent regarding the arbitrability of FLSA claims, are clearly met under settled law.

### A. Scope

Federal courts must "construe arbitration clauses as broadly as possible." Collins & Aikman Prods. Co. v. Bldg. Sys., 58 F.3d 16, 19 (2d Cir. 1995). Therefore, "any doubts

4

concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. (internal quotations omitted). Courts should "compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id. (quoting David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir. 1991)).

Plaintiff brings claims for unpaid overtime under the FLSA and the NYLL, and failure to provide required statements and notices under the NYLL. These claims plainly fall within the scope of the agreement, which covered "all statutory claims and any and all state or federal claims, that may arise out of or relate in any way" to plaintiff's work for defendants.[3]

B. **Congressional Intent and Arbitrability**

The Second Circuit has held that nothing in the FLSA evinces an intent from Congress to exclude claims brought under it from the broad policies of the FAA. See Rodriguez-Depena v. Parts Auth., Inc., 877 F.3d 122, 124 (2d Cir. 2017). Therefore, congressional intent does not preclude arbitration here.

III. **Agreement to Arbitrate**

The critical factor therefore becomes, and "[t]he threshold question facing any court considering a motion to compel arbitration[,] is whether the parties have indeed agreed to arbitrate." Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019) (internal quotations and alterations omitted).[4] Courts resolve this issue by looking to state law. See Bell

---

[3] That the agreement was executed after plaintiff's employment began does not alter the Court's analysis because "an arbitration provision may cover claims that accrued prior to the execution of the agreement." Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc., 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016) (collecting cases).

[4] Defendants' failure to sign the agreement is immaterial. "In New York, arbitration agreements are governed by New York C.P.L.R. § 7501." Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC, 641 F. Supp. 2d 196, 203 (S.D.N.Y. 2009). "Courts have consistently interpreted this rule to require that an agreement to arbitrate be in writing but not necessarily be signed by the party to be bound." Id.; see also Washington Heights–

5

v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002); see also Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012).[5]  Like other contracts, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting Doctor's Assocs., Inc., 517 U.S. at 687).

A. **Unconscionability**

Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation marks and alterations omitted).  "A determination of unconscionability generally requires a showing that the contract was *both* procedurally and substantively unconscionable when made." Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 791 (1988) (emphasis added).

       *i.  Procedural Unconscionability*

"Under New York law, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." Patterson v. Raymours Furniture Co., 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015) (citing Level Exp. Corp. v. Wolz, Aiken & Co., 305 N.Y. 82, 87, 111 N.E.2d 218, 219 (1953)).  Because plaintiff signed the agreement, he is presumed to have agreed to arbitration.  Nevertheless, he contends that the agreement was procedurally unconscionable.

---

West v. District 1199, 748 F.2d 105, 107–09 (2d Cir. 1984) (arbitration can be enforced without a formally executed arbitration agreement if arbitration was the intent of the parties).

[5] New York law governs this action pursuant to a choice-of-law provision in the arbitration agreement.

"The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice." Am. Family Life Assur. Co. of N.Y. v. Baker, 778 F. App'x 24, 26 (2d Cir. 2019). "The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." Id. Plaintiff argues that he lacked meaningful choice as he (a) was not given a chance to examine the agreement fully, (b) cannot read or understand English, and (c) was threatened with termination if he refused to sign. However, plaintiff's contentions are insufficient to establish procedural unconscionability.

First, courts have found that without "evidence that high pressure tactics were used to cause the Plaintiffs to feel that they had no choice but to sign on the spot without reviewing the terms," an agreement would not be unconscionable because a plaintiff was not given a chance to examine the agreement. Victorio v. Sammy's Fishbox Realty Co., LLC, No. 14-cv-8678, 2015 WL 2152703, at *13 (S.D.N.Y. May 6, 2015). This would hold true even if someone had "actually uttered . . . a threat" to fire a plaintiff if he did not sign on the spot. Id. Here, plaintiff does not allege that he was threatened or given no time to review the agreement, only that he *felt* that he had to sign it "that day." Even if he had been told that he needed to sign it that same day, that would also be substantially more time than "on the spot." Further, the agreement itself provides that plaintiff had the ability to consult with legal counsel.

Nor is a party's lack of understanding of the contract because he cannot speak English enough. Under New York law, "[a]n inability to understand the English language, without more, is insufficient to avoid [the] general rule" that a party is bound by the contract he signs. Maines

7

Paper & Food Service Inc. v. Adel, 256 A.D.2d 760, 681 N.Y.S.2d 390, 391 (3rd Dep't 1998). This is because an employee has a duty "of making a reasonable effort to have the document explained to him." Ragone, 595 F.3d at 122. Courts have consistently held that where, as here, a party did not make such an effort, the agreement was not procedurally unconscionable on this basis. See , e.g., Rodriguez-Depena v. Parts Auth., Inc., 877 F.3d 122, 124 (2d Cir. 2017); Molina v. Coca-Cola Enters., Inc., No. 08-cv-6370, 2009 WL 1606433, at *8 (W.D.N.Y. June 8, 2009) (collecting cases).

Additionally, plaintiff's feeling that he had to sign the agreement to keep his job does not make the agreement unconscionable. "It is well-settled . . . that conditioning employment on the acceptance of an agreement to arbitrate disputes . . . is not itself unlawfully coercive." Williams v. Parkell Prods., Inc., 91 F. App'x 707, 708-09 (2d Cir. 2003) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123-24 (2001); see also Ciago v. Ameriquest Mortg. Co., 295 F. Supp. 2d 324, 239 (S.D.N.Y. 2003) ("[t]he mere fact that an agreement to arbitrate was required as a condition of employment, or continued employment, also is insufficient to invalidate the provision.").

Without more evidence of "high pressure tactics that coerce [a signatory's] acceptance of onerous terms," Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002), plaintiff has not shown that sufficiently unconscionable circumstances exist here.[6] "Mere inequality in bargaining power between employers and employees is not alone sufficient to hold

---

[6] This is because we are not talking about the employee's release or waiver of retroactive or prospective wage claims. That would plainly be disallowed under the FLSA. Rather, what is at issue here is the movement of the forum for the resolution of those claims from state or federal court to an arbitratrion. The FAA shows Congress's intent not to disfavor that forum if the parties have agreed to arbitration.

The choice-of-forum attribute of arbitration agreements in particularly applicable here, where the arbitration agreement allows discovery procedures not that different from those that would be available in state or federal court.

8

arbitration agreements unenforceable." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 150 (2d Cir. 2004).

> ii. *Substantive Unconscionability*

Even if the circumstances surrounding the contract formation process were in fact procedurally unconscionable, a determination of unconscionability also requires a showing that the contract was substantively unconscionable when made. See Gillman, 73 N.Y.2d at 10, 537 N.Y.S.2d at 791. An agreement is substantively unconscionable when "one or more key terms are unreasonably favorable to one party." Sablosky v. Gordon Co., 73 N.Y.2d 133, 138, 538 N.Y.S.2d 513, 517 (1989).

Plaintiff takes issue with the provisions in the agreement that: (1) place limitations on damages and attorneys' fees; (2) require plaintiff to share potentially substantial arbitration fees, and to pay defendants' attorneys' fees if he is unsuccessful in the arbitration; and (3) shorten the statute of limitations for FLSA and NYLL claims to one year. Plaintiff is correct. All these provisions violate the FLSA.

The remedy for arbitration provisions that violate the FLSA is to strike them. The Supreme Court has set forth an "effective vindication" exception to the FAA that permits courts to invalidate "on 'public policy' grounds" agreements that "operat[e] . . . as a prospective waiver of a party's right to pursue [federal] statutory remedies." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013) (first and second alterations in original) (emphasis omitted) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). It has explained that this exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." Id. at 236.

Where a court identifies a provision that precludes a plaintiff from pursuing his statutory rights, the proper remedy "is to sever the improper provision of the arbitration agreement, rather than void the entire agreement." Ragone, 595 F.3d at 124-25 (quoting Brady v. Williams Capital Group, L.P., 64 A.D.3d 127, 878 N.Y.S.2d 693, 701 (1st Dep't 2009)). Once severed, a plaintiff is unable to show substantive unconscionability based on arguments concerning the severed provision. See Reyes v. Gracefully, Inc., No. 17-cv-9328, 2018 WL 2209486, at *8 n.8 (S.D.N.Y. May 11, 2018).

The provisions identified by plaintiff are unenforceable under the effective vindication exception. Severance, rather than invalidation of the entire agreement, is particularly appropriate because the agreement provides that "[i]f any part of this arbitration agreement is found to be unenforceable for any reason, the remaining provisions shall remain enforceable." Espinosa v. SNAP Logistics Corp., No. 17-cv-6383, 2018 WL 9563311, at *6 (S.D.N.Y. Apr. 3, 2018) (where there was a severability clause, "[t]he remainder of the arbitration provision is, therefore, enforceable, excluding Plaintiff's waiver of his statutory rights under the FLSA.").

First, any "waiver of plaintiff's right to attorneys' fees in the Agreement is unenforceable." Id. The FLSA requires defendants to pay the attorneys' fees of prevailing plaintiffs to encourage "private attorneys general" to enforce the statute. See Trinidad v. Pret a Manger (USA) Ltd., No. 12-cv-6094, 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014). Similarly, the requirement that plaintiff must pay attorneys' fees if he is unsuccessful in the arbitration is directly contrary to the FLSA, which does not provide for shifting attorneys' fees to a plaintiff. See 29 U.S.C. § 216(b). In addition, any waiver of punitive or liquidated damages is also unenforceable, as these waivers subvert the FLSA's statutory scheme. See Espinosa, 2018 WL 9563311, at *6.

10

Second, although the Second Circuit has yet to determine whether an arbitration provision that shortens the limitations period to bring claims under the FLSA is enforceable, federal courts have routinely disallowed arbitration provisions shortening the limitations period. See Castellanos v. Raymours Furniture Co., Inc., 291 F. Supp. 3d 294, 300 (E.D.N.Y. 2018) (180-day statute of limitations unenforceable as to plaintiffs' FLSA claims); see also Boaz v. FedEx Customer Services, Inc., 725 F.3d 603 (6th Cir. 2013); Mazurkiewicz v. Clayton Homes, Inc., 971 F. Supp. 2d 682 (S.D. Tex. 2013). This Court agrees.

Finally, aside from the effective vindication exception, the cost sharing provisions are unenforceable and severable. Courts in the Second Circuit have held that "it is sufficient for an employee seeking to avoid arbitration to show a likelihood that he or she will be responsible for significant arbitrators' fees, or other costs which would not be incurred in a judicial forum." Ball v. SFX Broad., Inc., 165 F. Supp. 2d 230, 240 (N.D.N.Y. 2001). Given that the agreement provides that the arbitrator must be a retired judge with "at least ten (10) years or legal experience," plaintiff has met his burden here, as the fees of such an arbitrator are likely to be substantial. This is especially so as plaintiff has asserted financial hardship, which defendants have not challenged. Moreover, where it is "clear that Plaintiff is correct about the cost to him of arbitration," a court may "sever the cost-sharing provision and require Defendants either to proceed in federal court or to bear the entire cost of the arbitration." See Reyes, 2018 WL 2209486, at *8.

**IV.      Stay of Action**

Finally, "[t]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay [has been] requested." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015). As a stay has been requested, the Court will stay the action and retain jurisdiction to enforce the arbitral award, if necessary.

## CONCLUSION

Defendants' motion to compel arbitration is granted with the modifications to the arbitration process and the terms of the arbitration agreement described above, and the case is stayed pending arbitration, which plaintiff must commence within 60 days. The stay will be implemented by administrative closure subject to reopening at the request of any party within 60 days of a final arbitration award.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       July 23, 2022